## CHADWICK *v.* EARHART.

THE CONSTITUTION of Oregon, art. 5, sec. 8, provides that, "In case of the removal of the governor from office, or of his death, resignation, or inability to discharge the duties of the office, the same shall devolve on the secretary of state."

THE GOVERNOR resigned, and the secretary of state entered on the discharge of the duties of the office of governor, and continued to discharge such duties after he ceased to be secretary of state, and until the governor next succeeding entered into the office. *Held,* That he was entitled to the salary of the office of governor the whole time.

APPEAL from Marion County.

*R. Williams,* for appellant.

*W. H. Holmes,* for respondent.

By the Court, WALDO, C. J.:

Two questions are submitted in this case. The first and principal one is, whether, when, under section 8 of article 5 of the constitution of Oregon, the duties of the office of governor devolve upon the secretary of state, he has a right to the salary of the office. Second. If this question be answered in the affirmative, whether he shall continue to perform the duties of the office for the remainder of the term of the outgoing governor, or shall he perform those duties only so long as he shall continue to be secretary of state.

" In case of the removal of the governor from office, or

of his death, resignation, or inability to discharge the duties of the office, the same shall devolve on the secretary of state: and· in case of the removal from office, death, resignation, or inability, both of the governor and secretary of state, the president of the senate shall act as governor until the disability be removed or a governor be elected." (Con. of Or., art. 5, sec. 8.)

If the office of governor continue after the governor ceases to hold the office, under this section; if the office be not vacant, but shall be lawfully filled by one acting therein directly as the agent of the state, and not in the character of deputy of a governor incumbent, it would seem difficult to distinguish such a person from a governor of right and in fact.

Counsel for the respondent claims that in the contingency provided for in said section 8, the duties of the office of governor become annexed to·the office of secretary of state, and are discharged as duties incident to the latter office. In other words, that the duties of the office, but not the office itself, devolve upon the secretary of state.

This position seems to require: First. Either that the office of governor should continue vacant during the time the secretary discharges its duties, and that such duties be in some way performed by the secretary of state, as such, consistently with a condition of vacancy; or, Second. That the office be filled and yet he who fills it be in nowise governor, but continue to be merely secretary of state.

In the first place, it is not shown how an office can be vacant and yet there be a person, not the deputy, or *locum tenens*, of another, empowered by law to discharge the duties of the office and· who does in fact discharge them. It is not explained how, in such a case, the duties can be separated from the office, so that he who discharges them does

not become an incumbent of the office. And, in the second place, how a person can fill the office of governor without being governor.

It is the function of a public officer to discharge public duties. Such duties constitute his office. Hence, given, a public office and one who, duly empowered, discharges its duties, and we have an incumbent in that office. Such is the case here. The secretary of state, by force of the function cast upon him, becomes governor, and consequently entitled to the salary appertaining to the office.

Nor does the language of the section, grammatically considered, bear the interpretation counsel has put upon it. Leaving out the co-ordinate clauses following the first clause, and the sentence reads: " In case of the removal of the governor from office, the same shall devolve on the secretary of state;" that is, the office shall devolve. So, taken with each of the succeeding clauses, the word " same " stands for " office."

The constitution of the United States, providing for the contingency of a vacancy in the office of president, is nearly the same with the provision of our state constitution providing for a vacancy in the office of governor. The only difference, conceivably material, is, that the constitution of the United States has the words, "powers and duties," where the constitution of Oregon has only the word " duties." But it is conceived that duties necessarily imply powers, and that, in legal effect, the language of the two constitutions is the same. (See *United States* v. *Bassett*, 2 Sto., 404.) Of this provision of the constitution of the United States, in *Merriam* v. *Clinch*, 6 Blatch., 9, [1867,] Mr. Justice Blatchford said: " Three times since the adoption of the constitution, the president has died, and, under the provision referred to, the powers and duties of the office of

president have devolved on the vice president. All branches of the government have, under such circumstances, recognized the vice president as holding the office of president, as authorized to assume its title and as entitled to its emoluments. The vice president holds the office of president until a successor to the deceased president comes to assume the office, at the expiration of the term for which the deceased president and the vice president were elected."

The case of *The People ex rel. Church* v. *Hopkins*, 35 N. Y., 74, is much in point. In 1859, a law was passed in New York establishing the office of superintendent of insurance. The superintendent was to be appointed by the governor, for the term of three years, with authority to appoint clerks, one of whom was to be designated his deputy, and to "possess the powers and perform the duties attached by law to the office of principal, during a vacancy in such office, and during the absence and inability of his principal." The superintendent resigned his office, the duties of which thereupon devolved upon the deputy. The deputy claimed the salary of a superintendent during the time he discharged the duties of the office, and it was held that he was entitled to such salary. The court, by Grover, J., supported the conclusion reached, by references which are especially pertinent in this case: "But there are precedents which, though not judicial, I regard as entitled to be considered as decisive of the question under consideration. In the constitution of the state, adopted in 1822, will be found the following provision: 'In case of the impeachment of the governor, or his removal from office, death, resignation, or absence from the state, the powers and duties of the office shall devolve upon the lieutenant governor for the residue of the term, or until the governor, absent or impeached, shall return or be acquitted.' (Const., 1822, art. 3, sec. 6.) On the 11th

of February, 1828, the office of governor became vacant by the death of DeWitt Clinton, the then incumbent of the office, and its powers and duties, under the above provision of the constitution, devolved upon Nathaniel Pitcher, then lieutenant governor. The question arose whether he was to be regarded, in the exercise of the powers and performance of the duties so vested in him, as acting governor, or in the performance of the contingent duties of lieutenant governor, and, as a consequence, whether he was entitled to the salary of the former office, or the compensation given to the lieutenant governor for his services as such. It was held by William L. Marcy, then comptroller, that he was to be regarded as the acting governor, and entitled to the salary given by law to that officer. The same questions, under the same provision, again arose in 1829, upon the resignation of the office of governor by Martin Van Buren, and the powers and duties of the office devolving upon Enos T. Throop, then lieutenant governor, and were decided the same way by Silas Wright, then comptroller. It will be seen that these questions were identical with that in the present case. We surely shall not go so far astray in following the precedents established by these able jurists, wise statesmen, and rigid economists."

The principle on which the second question is to be decided, namely, whether the appellant shall cease to be governor when he ceases to be secretary of state, seems to be this: If an office be appendant, as the expression is in 1 Leon., 321, to another office, the determination of the first office will determine the second. This is the case where a person holding any office is *ex officio* entitled to some other office. For instance, in *City of Portland* v. *Denny*, 5 Or., 160, the recorder of the city of Portland was *ex officio* a justice of the peace. In that case, the office of justice of the peace

was appendant to the office of recorder and determined with it.   On the contrary, if the nomination or appointment to an office be by *descriptio personarum* of one who holds some office by the title of which he is described, and who on some contingency is to enter and fill another office, the answering the description at the time the contingency arises designates him as the person who is to enter and fill the office, and when, as thus designated, he enters into the office, he holds it in his natural, and not in his official capacity. This seems to be the principle which applies when the office of governor devolves on the secretary of state on the happening of any of the events specified in the constitution. That the president of the senate, who holds under a similar title, ceases to be president of the senate when he becomes governor, seems evident, for the two offices are incompatible at common law, and there is no constitutional implication that both offices shall be held together.   It would follow, therefore, that the president of the senate would hold the office of governor, once incumbent, without reference to his office of president of the senate.   Now, as two offices may remain distinct, which are not incompatible though the officer is the same person, it would seem that the same principle should govern the holding of the office of governor by the secretary of state.

This question, therefore, must also be answered in favor of the appellant, and judgment be entered accordingly.

Judgment reversed.